UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUIS JAIME CASTILLO BUTTERS,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ACADEMY OF SCIENCES, *et al.*,<br><br>Defendants. | Civil Action No. 22-cv-3054 (TSC) |

**MEMORANDUM OPINION**

Plaintiff—a former member of the National Academy of Sciences ("NAS")—sued NAS and its President, alleging that they defamed him by implication in statements about their decision to revoke his membership. Having considered the operative Complaint and the briefing, the court will GRANT Defendants' Motion to Dismiss.

I.     **BACKGROUND**

The court has already discussed some of the background in this case in its May 31, 2023, Memorandum Opinion, ECF No. 10, and its June 10, 2024, Memorandum Opinion ("Mem. Op."), ECF No. 19. In response to this court's invitation in its last Opinion, Plaintiff's most recent Complaint addressed only one count: defamation by implication. Am. Compl., ECF No. 30. Defendants again moved to dismiss. Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 31.

The facts alleged in the most recent complaint are substantially similar to those in the previous complaints. *See* ECF Nos. 1, 12. But Plaintiff now alleges that Defendants defamed him *by implication* in their statements about Plaintiff when (1) NAS and McNutt sent a

1

communication to NAS members, (2) NAS and McNutt published a statement on NAS's public-facing website, and (3) McNutt provided a statement published in an article—all of which were related to the fact that NAS had revoked Plaintiffs' membership. Am. Compl. ¶¶ 15, 22, 32–35. According to the Complaint, Defendants revoked Plaintiff's membership for violating Section Four of the NAS Code of Conduct ("Section Four"), which requires NAS members to "treat all individuals in the scientific enterprise collegially and with respect," and prohibits "all forms of discrimination, harassment, and bullying." *Id.* ¶ 18 (footnotes omitted); ECF Nos. 30-1, 30-3.

Plaintiff alleges that Defendants defamed him by implication by referencing Section Four in revoking his membership, leading "the public to believe that [he] had engaged in discriminatory, sexually harassing, and/or bullying conduct," which Plaintiff claims is false and odious, and therefore, defamatory. Am. Compl. ¶¶ 29, 61. Defendants argue that Plaintiff failed to allege (1) defamation by implication, and (2) that Defendants acted negligently. *See* Defs.' Mot. Because the court concludes that Plaintiff failed to allege that Defendants defamed him by implication, the court does not consider the negligence arguments.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court presumes the truth of the complaint's factual allegations, *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), but

need not "accept as true a legal conclusion couched as a factual allegation," nor "inferences [that] are unsupported by the facts set out in the complaint," *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

### III.   ANALYSIS

"In the District of Columbia, 'a statement is defamatory if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.'" *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (citation omitted).  But an allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear "odious, infamous or ridiculous." *Id.* (citation omitted).  A defamation claim can be sustained either by express words or by the implication of the defendant's statement. *White v. Fraternal Ord. of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990).

"A defamation by implication stems not from what is literally stated, but from what is implied." *Id*.  The theory "is that even concededly accurate information is capable of bearing a defamatory meaning." *Id.* at 519.  A defamation by implication claim must establish that the defendant's statement, viewed in its entire context, was "capable of bearing a defamatory meaning" and "contained or implied provably false statements of fact." *Fells v. Serv. Empls. Int'l Union*, 281 A.3d 572, 586 (D.C. 2022) (citation omitted).  With these principles in mind, the court takes the three allegedly defamatory statements in turn.

**A. The Communication to NAS Members and the Communication Published on NAS's Website.**

Plaintiff does not challenge the truth of the communication sent to NAS members and the communication published on NAS's website regarding his membership recission.  He alleges that although his membership was indeed revoked, "the statements by McNutt and NAS create the inescapable implication that [Plaintiff] violated one or more of the odious behaviors," listed

3

in Section Four.  Am Compl. ¶ 27.  Thus, Plaintiff does not contest any assertion of fact—he contests the implication conveyed by those facts.

Even if conveying only true facts, a communication can be defamatory by implication if, "by the particular manner or language in which the true facts are conveyed, [the communication] supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference."  *White*, 909 F.2d at 520.  Though Plaintiff reframed his defamation by implication claim, he still fails to state a claim because the challenged communications, which are true, do not affirmatively suggest that Defendants intended or endorsed a defamatory inference.

The communication sent to NAS members stated that "an international NAS member's membership has been rescinded for violating the NAS Code of Conduct" and "more detailed information is posted on the NAS Members' Center password protected website."  ECF No. 30-1.  Plaintiff fails to show how this conveys a defamatory meaning, even viewed in its entire context.  This communication generally refers to an "international NAS member[]," without disclosing the member's identity, and it communicates that the membership was rescinded for violating the Code of Conduct *generally*, without reference to a specific provision of the Code.  Defendants did not "do[] something beyond the mere reporting of true facts," *White*, 909 F.2d at 520, to suggest that they intended or endorsed a defamatory inference.  Evidence that supports such a finding includes "suggestive juxtapositions, turns of phrase, or incendiary headlines," *id.* at 526, but Plaintiff points to none.

The same is true of the communication published on the website.  Though this statement does mention Plaintiff by name and states that his membership was rescinded due to a Section Four violation, ECF No. 30-2, it is not clear that "the manner or language," *White*, 909 F.2d at

4

520, in which NAS conveyed these true facts suggested that Defendants endorsed a defamatory inference.  According to Plaintiff, the defamatory inference is that because Plaintiff's membership was revoked for a Section Four violation, he therefore must have engaged in an odious behavior.  Am Compl. ¶¶ 29, 58–61.  But as Plaintiff concedes, Defendants "referred to [Section Four]," but did not "specifically refer[] to any of [Plaintiff's] alleged actions."  *Id.* ¶¶ 50, 57.  Plaintiff contends that Defendants should have provided additional details to provide context, alleging that "McNutt and NAS had a duty to either provide NAS membership and the public full context or say next to nothing."  Pl.'s Opp'n to Defs.' Mot. to Dismiss at 9–10 (Pl.'s Opp'n), ECF No. 32.  But as Defendants point out, "[f]ollowing Plaintiff's logic, an organization cannot ever state that someone's membership had been rescinded without engaging in defamation," Def's Mot. at 16, unless the organization provides "full context" or says "next to nothing."  Plaintiff offers no support for this position.

In any event, Section Four references several types of behaviors—not all of which would make Plaintiff seem "odious, infamous or ridiculous," *Wilner*, 760 A.2d at 594.  As both parties point out, "defamation by implication requires 'an especially rigorous showing.'"  *Bauman v. Butowsky*, 377 F.Supp.3d 1, 15 (D.D.C. 2019) (quoting *Wilner*, 760 A.2d at 596).  It is not enough that a statement can "be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses that inference."  *Id.* (same).  Code of Conduct Section Four prohibits "all forms of discrimination, harassment, and bullying" and requires members to "treat all individuals in the scientific enterprise collegially and with respect." Am. Compl. ¶ 18.  Even viewed in its entire context, the communication does not affirmatively suggest that Defendants intended or endorsed the defamatory inference that Plaintiff engaged in an odious behavior.  A reader could reasonably read this to mean that

Plaintiff did not treat an individual with respect, or that he was not collegial. These behaviors do not make Plaintiff seem "odious, infamous, or ridiculous." And Plaintiff, again, does not point to any case that supports his position.

### B. McNutt's Statement in the *ScienceInsider* Article

Plaintiff also does not state a claim as to McNutt's statement for the reasons already discussed. *ScienceInsider* published an article on October 15, 2021, reporting that NAS had rescinded Plaintiff's membership. ECF No. 30-4 at 1. The article discussed how a university investigated Plaintiff for sexual harassment allegations in 2020 and the circumstances surrounding that investigation. *Id.* at 2. The article then reported that Plaintiff's NAS membership recission "marks the third time in 5 months that [NAS] has ejected a member for sexual harassment," though the article did not indicate that NAS confirmed that Plaintiff's ejection was because of sexual harassment allegations. *Id.* at 2–3. Instead, the article reported only that "[Plaintiff's] ejection was confirmed by NAS[.]" *Id.* at 3. In the article, McNutt stated that "[NAS] members need to be role models not only in what they have achieved, but also in setting the highest standards for professional conduct." *Id.*.

Plaintiff does not dispute that the article correctly reported that his membership had been revoked but denies its stated reason for the recission: the sexual harassment allegations. Am. Compl. ¶ 63(e). He alleges that "McNutt implied that this reporting was correct with respect to sexual harassment," *id.*, and "by participating in this article . . . , the implication of McNutt's statement is defamatory, as any reader would infer that McNutt and NAS indeed revoked [his] membership due to [Section Four] violations," *id.* ¶ 60. Even viewing Plaintiff's allegations as true, the court cannot find that "by the particular manner or language in which the true facts

6

[were] conveyed," the communication supplied "additional, affirmative evidence suggesting that" Defendants intended a defamatory inference. *White*, 909 F.2d at 520.

First, as this court already found, in making a statement in an article in which sexual harassment allegations are mentioned, Defendants did not affirmatively suggest that they intended or endorsed the inference that they rescinded Plaintiff's membership because of those allegations. Defendants never mention sexual harassment in the article, and they do not otherwise imply that Plaintiff's rescission was based on sexual harassment allegations. And the article does not draw an explicit connection between the allegations and NAS's decision to rescind Plaintiff's membership. Plaintiff did not take the court's invitation to "plead additional facts tying Defendants' statements to the sexual harassment allegations," Mem. Op. at 8. He does not allege that Defendants ever mentioned or implied that his Section Four violation involved sexual harassment, only that they are quoted in the same article that mentions sexual harassment. The facts, as stated in the Complaint, do not support Plaintiff's claim.

Second, as for the implication that Plaintiff violated Section Four and thus necessarily engaged in odious behavior, McNutt's statement and participation in the article cannot be reasonably read to impart a false innuendo, or affirmatively suggest that Defendants intended or endorsed a defamatory inference. NAS conducted a review process, found that Plaintiff violated Section Four, and thus rescinded his membership. ECF No. 30-3. Plaintiff may not agree with that outcome or with the level of detail required to communicate a membership recission, *see supra* at 5, but that is not enough to state a defamation by implication claim. Even viewed in its entire context, Defendants did not do "something beyond the mere reporting of true facts," *White*, 909 F.2d at 520, to suggest that they intended or endorsed a defamatory inference.

7

### C. Amendment

Finally, Plaintiff claims to have "further facts, not alleged in his Second Amended Complaint, that would strengthen his defamation by implication argument," and cites "strategic reasons" for not including these facts. Pl.'s Opp'n at 14. He claims that allowing an amendment to the Complaint, if necessary, is reasonable. *Id.* The court cannot agree. The court has given Plaintiff sufficient opportunities to add facts to support his claim, and he has failed to do so. A court may deny a motion for leave to amend if a party had sufficient opportunity to state the amended claims and failed to do so. *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 420 (D.D.C. 2010). Indeed, "leave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint," *id.*, which appears to be the case here. Absent a showing that Plaintiff only learned of the information after he filed his most recent Complaint, the court will not entertain another amendment.

### IV. CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 31. An Order will accompany this Memorandum Opinion.

Date: December 3, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge